UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-21806-CIV-KING

VASILEIOS POLYCHRONAKIS,

    Plaintiff,

v.

CELEBRITY CRUISES, INC.,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

THIS CAUSE comes before the Court on Defendant's Motion to Compel Arbitration (D.E. #11), filed September 26, 2008. Plaintiff filed a Preliminary Response on October 14, 2008 (D.E. #12) and, upon Court approval, filed a Supplemental Response on November 6, 2008 (D.E. #21). Defendant replied to Plaintiff's Preliminary Response on October 24, 2008 (D.E. #16) and to Plaintiff's Supplemental Response on December 1, 2008 (D.E. #42).

## I. FACTUAL BACKGROUND

Vasileios Polychronakis ("Plaintiff"), a Greek citizen, worked for Celebrity Cruise Lines, Inc. ("Defendant") from 2002–2007. Due to the nature of Plaintiff's work as a crew member on a cruise ship, Plaintiff signed a new employment contract for each outing. (Jay Rombach's Aff. ¶ 6). As a result, Plaintiff's employment was governed by various agreements. Both parties concede that, from 2002–2004, Plaintiff's employment was subject

to Greek employment contracts, which incorporated a Collective Bargaining Agreement with a Greek union. (D.E. #40 Ex. 1) ("This employment contract shall be governed exclusively and solely by the Greek Laws and the Greek Collective Agreements . . . ."); (*see also* Jay Rombach's Aff. ¶ 2). Article 30 of the incorporated Greek Collective Agreement mandates arbitration for any dispute between Plaintiff and Defendant. (*See* Def.'s Reply to Pl.'s Supp. Resp. Ex. B) ("Any dispute arising as to the application and interpretation of the terms of this Collective Agreement between the contracting parties or the shipowners and the employees is referred to arbitration for the purpose of its settlement.").

When Plaintiff worked for Defendant from 2004–2007, Plaintiff signed a different document. Beginning in 2004, Plaintiff was required to sign Defendant's standard international Celebrity Sign-On Employment Agreement ("SOEA") (Jay Rombach's Aff. ¶ 4). According to Defendant, Plaintiff "was required to sign an SOEA each and every time he began employment . . . ." (Def.'s Reply to Pl.'s Supp. Resp. 5). The Parties have submitted copies of three SOEAs signed by both parties, which together cover Plaintiff's employment from April 2005–January 2007.[1] Each SOEA contains the following provision:

> I understand and accept that the employer may terminate this agreement with or

---

[1] A review of the record reveals that Defendant produced two signed SOEAs and attached them to the Motion to Compel Arbitration (Def.'s Mot. to Compel Arbitration Ex. A). These SOEAs cover Plaintiff's employment from: (1) April 22, 2005–August 21, 2005; and (2) November 20, 2005–April 30, 2006. Upon the Court's November 14, 2008 Order (D.E. #31) that the "parties are DIRECTED to furnish any such existing contracts . . . .," Defendant submitted a third signed SOEA covering Plaintiff's employment from July 15, 2006–January 20, 2007 (D.E. #40 Ex. 2).

2

> without cause provided 7 days notice is given or 7 days pay in lieu of notice. I further understand and agree that the Collective Bargaining Agreement between the Company and the Union is incorporated into and made part of this Employment Agreement and that I and the Company are bound by its terms and conditions.

(Def.'s Mot. to Compel Arbitration Ex. A).

Defendant contends that the language of the SOEAs refers to, and incorporates by reference, a Collective Bargaining Agreement between Defendant and the Federazione Italianan Transporti ("the Italian Union") (Jay Rombach's Aff. ¶ 4). Article 26 of the Italian Union Collective Bargaining Agreement states in relevant part:

> All grievances and any other dispute whatsoever, whether in contract, regulatory, tort, or otherwise, including constitutional, statutory, common law, admiralty, intentional tort, and equitable claims, relating to or in any way connected with the seafarer's service for the Company, including but not limited to claims for personal injury or death, no matter how described, pleaded or styled, and whether asserted against the Company, Master, Employer, Ship Owner, vessel or vessel operator, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Conventions on Recognition and Enforcement of Foreign Arbitral Awards ("The Convention"). Any such arbitration shall take place in the Seafarer's country of citizenship . . . .

(Def.'s Mot. to Compel Arbitration Ex. B) (citation omitted).

On June 4, 2008, Plaintiff filed this action in the Eleventh Circuit of Miami-Dade County against Defendant to recover alleged unpaid wages that accrued during his employment from 2002–2007. Defendant removed the case to this Court on June 24, 2008, based upon the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ("the Convention), and its implementing legislation, 9 U.S.C. § 201, *et seq.*

3

(D.E. #1). Defendant now moves this Court to compel arbitration pursuant to the Convention.

## II. STANDARD OF REVIEW

Federal law strongly favors agreements to arbitrate, particularly in international commercial transactions. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *Del Orbe v. Royal Caribbean Cruises, LTD*, 549 F. Supp. 2d 1365, 1368 (S.D. Fla. 2008). In deciding a motion to compel arbitration under the Convention, a district court conducts a "very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (citations omitted). There are four jurisdictional prerequisites that must be met prior to compelling arbitration: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *See Bautista*, 396 F.3d at 1294 n.7. A district court "must compel arbitration unless the four prerequisites are not satisfied or one of the Convention's affirmative defenses applies." *Vacaru v. Royal Caribbean Cruises, LTD*, No. 07-23040-CIV, 2008 WL 649178, at *4 (S.D. Fla. Feb. 1, 2008). "The affirmative defenses authorized by the Convention have a 'limited scope' allowing parties to avoid arbitration only where the arbitration is 'null and void, inoperative or incapable

4

of being performed' as those terms are defined within the Convention." *Goshawk Dedicated v. Portsmouth Settlement Co. I*, 466 F. Supp. 2d 1293, 1304 (N.D. Ga. 2006) (*quoting Bautista*, 396 F.3d at 1302).

## III. ANALYSIS

Plaintiff does not dispute the application of the Greek employment contracts for the years Plaintiff worked prior to 2004. (Pl.'s Supp. Resp. 10) ("[I]f as Defendant contends, there are no Greek collective bargaining agreements <u>for the years 2004 and forward</u>, then no CBA should be applied to the Plaintiff at all for those years.") (emphasis added) (citation omitted). Thus, this Court is confronted with the issue of whether Defendant has satisfied its burden of proof as to whether the agreements to arbitrate for 2004–2007 meet the Convention's jurisdictional requirements sufficient to compel arbitration.

As to Plaintiff's employment contracts from 2004–2007, two of the Convention's jurisdictional prerequisites are at issue.[2] Plaintiff argues that "there is no demonstrated

---

[2] Plaintiff also seems to argue that the agreement was unconscionable by stating "Defendant did not present the two SOEAs to the Plaintiff and require their execution until Plaintiff was well into the voyage, at sea, and already in the midst of performing his job . . . after any opportunity for negotiation or disembarkation had passed." (Pl.'s Supp. Resp. 4–5) (emphasis omitted). The Court finds that this is not an affirmative defense authorized by the Convention. *See, e.g.*, *Goshawk Dedicated*, 466 F. Supp. 2d at 1305 (finding that a "state law defense of unconscionability is not available as a defense under the 'null and void' provision of the Convention."). Due to the "unique circumstances of foreign arbitration," the null and void clause of the Convention "encompass[es] only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Bautista*, 396 F.3d at 1302. Because Plaintiff has not

applicable 'written agreement to arbitrate' the dispute, and additionally there is no demonstrated 'agreement that arises out of a legal relationship' that can bind the Plaintiff, as Plaintiff is not an Italian union member." (Pl.'s Supp. Resp. 9) (*quoting Bautista*, 396 F.3d at 1294 n.7). Thus, similarly to the Eleventh Circuit in *Bautista v. Star Cruises*, "[f]irst, we must determine whether the arbitration agreement arises out of a commercial legal relationship. Second, we ask whether there exists an 'agreement in writing' to arbitrate the matter in dispute." *Bautista*, 396 F.3d 1295.

A.   **The Agreements Arise out of a Commercial Legal Relationship.**

Plaintiff argues that "there is no demonstrated 'agreement that arises out of a legal relationship' that can bind the Plaintiff, as Plaintiff is not an Italian union member." (Pl.'s Supp. Resp. 9). Directly contradictory to Plaintiff's position, however, a seaman's employment contract has consistently been found to form a "commercial legal relationship" under the Convention. *See, e.g., Bautista*, 396 F.3d at 1294–95; *Azevedo v. Carnival Corp.*, No. 08-20518-CIV, 2008 WL 2261195, at *4 n.2 (S.D. Fla. May 30, 2008).

Plaintiff argues that a sufficient legal relationship does not arise between him and Defendant under the Convention because Plaintiff was never a member of the Italian Union, and thus could not be subject to the incorporated collective bargaining agreement.

---

alleged fraud, mistake, duress, or waiver, the Court finds that there is no sufficient affirmative defense alleged.

Plaintiff argues that "[d]espite its burden of proof, . . . the Defendant failed to produce any evidence whatsoever to establish that the Greek Plaintiff is a *member* of [the Italian Union] . . . ." (Pl.'s Supp. Resp. 6). Instead, Plaintiff offers evidence that "the only union that the Greek Plaintiff was a member of during his employ was the Greek union, the Pan-Hellenic Seaman's Federation." (Pl.'s Supp. Resp. 3).

Plaintiff's theory that membership in the Italian Union is necessary for his employment to be governed by the Italian Union employment agreement is incorrect. *See, e.g., Vacaru*, 2008 WL 649178, at *4 (finding that non-union plaintiff-seaman was bound by an arbitration provision where, even though the arbitration provision referred to was in a collective bargaining agreement, "the collective bargaining agreement [was] expressly incorporated by reference into the employment agreement executed by the parties"); *cf. N.L.R.B. v. Jaggars-Chiles-Stovall, Inc.*, 639 F.2d 1344, 1347 (5th Cir. 1981) (finding that unions often have a duty "to represent both union and non-union members . . . [and this duty] extends not only to the negotiations for an agreement, but also to the enforcement of the provisions of the agreement.") (citations omitted). Whether or not Plaintiff was a member of the Italian Union is irrelevant to the question of whether he is subject to the incorporated collective bargaining agreement. The Court finds that the employment agreements signed by both Parties arise out of a commercial legal relationship as required by the Convention.

### B.     The Agreements Constitute a Valid Agreement in Writing.

Under the Convention, "[a]greements in writing include 'an arbitral clause in a contract or an arbitral agreement, signed by the parties or contained in an exchange of letters or telegrams.'" *Bautista*, 396 F.3d at 1300 (*quoting* the Convention, art. II(2)). The Parties have provided three executed SOEAs and a copy of the incorporated Italian union collective bargaining agreements, which were in effect at the time that each SOEA was signed.

As an initial matter, the Court finds that the SOEAs executed by Plaintiff can incorporate by reference terms of a separate document, such as the included collective bargaining agreements. Even though Plaintiff did not sign the collective bargaining agreements, "[a]n agreement in writing to arbitrate exists even where the arbitration language is not stated in the main contract itself but, rather, is contained in a separate contract that is incorporated by reference into the main contract." *Allen v. Royal Caribbean Cruises, LTD*, No. 08-220140-CIV, 2008 WL 5095412, at *5 (S.D. Fla. 2008) (citations omitted); *see also Del Orbe* 549 F. Supp. 2d at 1367, 1371 (holding that where an employment agreement referred to "the Collective Bargaining Agreement between th Company and the Union," such language mandated that "the CBA [was] expressly incorporated by reference into the individual employment agreement executed by the parties.").

8

Plaintiff states that Defendant's "statement [that the SOEA expressly incorporates the Collective Bargaining Agreement between Defendant and the Italian Union] is patently untrue." (Pl.'s Supp. Resp. 2). In support, Plaintiff argues that the language of the SOEAs is too vague to constitute a valid agreement in writing. In support, Plaintiff notes that the SOEAs fail to name a specific union or a specific collective bargaining agreement sufficient enough to be incorporated by reference. (*See* Pl.'s Supp. Resp. 3) (stating that because "[t]here was no union or collective bargaining agreement named in the SOEA at the time [the SOEAs] . . . were presented to the Plaintiff . . . there was never any meeting of the minds . . . .").

Plaintiff's argument that there was no valid agreement in writing under the Convention because the terms of the executed document did not provide enough specificity to give sufficient notice was rejected by the Eleventh Circuit in *Bautista v. Star Cruises*. In *Bautista*, a group of plaintiffs argued the validity of an arbitration clause to their employment contracts, citing the fact that they were never given official notice of the arbitration provision. *Bautista*, 396 F.3d at 1300–01. The Eleventh Circuit stated:

> Plaintiffs, however, offer no authority indicating that the Convention or the Convention Act impose upon the party seeking arbitration the burden of demonstrating notice or knowledgeable consent. To require such an evidentiary showing in every case would be to make an unfounded inference from the terms of the Convention and would be squarely at odds with a court's limited jurisdictional inquiry colored by a strong preference for arbitration . . . [W]e find it especially appropriate to abide by the general principal that "[o]ne who has executed a written contract and is ignorant of

9

its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation"

*Id.* at 1301 (*quoting Vulcan Painters v. MCI Constructors*, 41 F.3d 1457, 1461 (11th Cir. 1995)).

The Court finds that there are valid agreements in writing, signed by both Parties, which governed Plaintiff's employment with Defendant after 2004. Defendant has produced three SOEAs signed by both Parties. Plaintiff does not dispute that he indeed signed the agreements. *Cf. Bautista*, 296 F.3d at 1300 (holding that an arbitration provision applied where plaintiffs argued that they did not have an opportunity to review the provision but did "not dispute the veracity of the signatures"). On the face of the SOEAs, Plaintiff acknowledged receipt of a copy of the collective bargaining agreement. (*See* Def.'s Mot. to Compel Arbitration Ex. A) (stating that Plaintiff "acknowledge[s] having received copies of (1) the Collective Bargaining Agreement referred to [by the SOEA] . . . ." By signing the SOEAs, Plaintiff entered a valid agreement in writing under the Convention and agreed to be bound by the terms and conditions of the incorporated collective bargaining agreement, irregardless of the vagueness of the agreements. *See, e.g., Doe v. Royal Caribbean Cruises, LTD.*, 365 F. Supp. 2d 1259, 1262–63 (S.D. Fla. 2005) (finding, that in the face of an undisputed signature, a court must enforce a arbitration provision even though Plaintiff claimed he the terms were no fully disclosed) (*citing Bautista*, 396 F.3d at 1293, 1302).

## IV. CONCLUSION

The Court finds that Defendant has satisfied its burden of proof under the Convention to send the entire above-styled matter to arbitration. Defendant has submitted a copy of the Greek employment contract signed by Plaintiff, which required arbitration and undisputedly governed Plaintiff's employment prior to 2004.

Defendant has also submitted copies of the SOEA employment contracts and incorporated collective bargaining agreements, which governed Plaintiff's employment from 2005–2007. Upon review of the record, the only time period of Plaintiff's employment of which neither party has submitted a contract is 2004–2005. Because the Court finds that there is no evidence to the contrary that contracts for 2004–2005 would be any different than those produced by Defendant, (*Cf.* Jay Rombach's Aff. ¶¶ 3–4) ("beginning in 2004, all Greek Hotel Crewmembers . . . were employed pursuant to the standard international Celebrity Sign On Employment Contract . . . ."), the Court sends the entire matter to arbitration. Accordingly, after careful review of the record and the court being otherwise fully advised, it is

**ORDERED, ADJUDGED, and DECREED** that:

1) Defendant's Motion to Compel Arbitration **(D.E. #11)** be, and the same is, hereby **GRANTED**. Plaintiff is hereby **DIRECTED** to proceed to arbitrate this dispute as per his employment contract.

2) All other pending motions are **DENIED AS MOOT**.

3) The Clerk of the Court is instructed to **CLOSE** this case.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 10th day of December, 2008.

*/s/ James Lawrence King*
JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   <u>**Counsel for Plaintiff**</u>
**Rebecca Bedford Watford**
Watford Law Firm
4000 Ponce de Leon Boulevard
Suite 470
Coral Gables, FL 33146

**Juan Manuel Perez , Jr.**
7975 NW 154 Street
Suite 420
Miami Lakes, FL 33016

<u>**Counsel for Defendant**</u>
**Curtis Jay Mase**
**Rachel Sherry Cohen**
**Richard David Lara**
Mase & Lara PA
80 SW 8th Street
Suite 2700
Miami, FL 33130